**FILED**
**Aug 31, 2020**
**02:43 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Jennifer Lackey,** | ) | **Docket Number: 2018-06-2392** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File Number: 78037-2017** |
| | ) | |
| **Marriott International,** | ) | |
| **Self-insured employer.** | ) | **Judge Kenneth M. Switzer** |
| | ) | |

---

## EXPEDITED HEARING ORDER

---

Jennifer Lackey tripped and fell at her former workplace, the Opryland Hotel, a Marriott property. Marriott accepted her claim and provided treatment for all injuries but later denied treatment for her claimed breast injury.[1] Ms. Lackey seeks an order that Marriott provide treatment for her breast. The Court held an expedited hearing on August 26, 2020. For the reasons below, the Court must find that the work injury did not cause Ms. Lackey's present breast condition and denies her request.

### Claim History

On January 20, 2017, Ms. Lackey was setting up an outdoor bar. As she briskly walked up a ramp, she tripped on a crack in the tile and was "thrown forward." She hit her face and the entire left side of her body from the knee up. Seeing Ms. Lackey bloodied, upset, confused, and embarrassed by the fall, Marriott instructed her to go to the emergency room by cab.

A few days later, Ms. Lackey saw a nurse practitioner at an occupational clinic, who noted that Ms. Lackey underwent a double mastectomy and breast reconstruction in 2016 because testing had revealed the presence of the BRCA gene. The nurse practitioner

---

[1] According to the dispute certification notice, Ms. Lackey also alleged injury to her head, teeth, upper lip and left knee.

1

observed that her left implant was "slightly asymmetrical." At a January 25, 2017 visit with a physician at the same clinic, he noted "tilting" and "dimpling" of her left breast, but he did not offer an opinion of whether its condition related to the work accident. The physician referred her to a plastic surgeon.

Marriott offered a panel of physicians, and Ms. Lackey chose Dr. Stephen Davis, the surgeon who performed the breast reconstruction a few months earlier. She saw him in February 2017. Dr. Davis wrote, "Physical examination today reveals the implants are sitting in a good location. . . . [T]he irregularities of the breasts . . . were present before as a result of the previous surgeries and issues that she had." He released her from treatment but said she could return as needed. After a second fall at work, and approximately one year later, Ms. Lackey returned to Dr. Davis, who observed irregularities and ordered an MRI.[2]

After reviewing the MRI report, which revealed intact implants and no problems with the capsules, Dr. Davis noted, "She believes the implant shifted medially towards [her] sternum." He concluded, "I cannot be 100% sure, or comfortable, with the fact that falling caused all of this to occur." Dr. Davis thought surgically repairing the breast would be "quite extensive" and wrote, "I can't promise her the long-term benefit associated [with] that and believe that it may be more problematic for her."

Marriott followed up with a letter asking: "Can you state within a reasonable degree of medical certainty whether the implant shift and thinning around the implant that could require surgery . . . primarily arose out of (i.e., more than 50%) her alleged injury on January 20, 2017 at Gaylord Opryland?" Dr. Davis responded "no."

Ms. Lackey later moved to North Carolina and saw an unauthorized physician, plastic surgeon Dr. Malcolm Marks. Before attending the appointment, Ms. Lackey obtained copies of her treatment records from Dr. Davis, which she presented to Dr. Marks. In his June 19, 2020 records, Dr. Marks assessed a "very distorted implant left first noted after fall which amongst report of other injuries bruised her left chest wall[.] Left breast distortion may be related to fall on breast with either partial capsulectomy and herniation implant in areas or resolved hematoma with distortion."

**Findings of Fact and Conclusions of Law**

To prevail, Ms. Lackey must show that her current breast condition arose primarily out of her employment. Specifically, she must show "to a reasonable degree of medical certainty, that the employment contributed more than fifty percent in causing the injury." Tenn. Code Ann. § 50-6-102(14) (2019). Since this is an expedited hearing, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *McCord*

---

[2] Ms. Lackey fell at work again several months later, injuring her low back. The parties settled that claim.

2

*v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The bulk of Ms. Lackey's evidence was her own testimony, which the Court found very compelling and extremely credible. She described herself as "shy" but was nonetheless able to recount the details of her injury and treatment of an intimate body part. She never wavered, despite lengthy and contentious cross-examination. The Court finds that Ms. Lackey fell on her left side and struck her chest and left breast during the fall, among other body parts.

However, along with her testimony, the Court must also consider the medical evidence. Ms. Lackey said that the link between her accident and the distorted implant is "obvious." Longstanding Tennessee case law, which this Court must apply, states that "except in the most obvious, simple and routine cases, the employee must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)). The very fact that two skilled plastic surgeons disagreed on the cause of her current breast condition confirms that this is not an obvious case.

A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996). In this case and on the current record, the Court must accept Dr. Davis's opinion over Dr. Marks's.

Dr. Davis performed Ms. Lackey's most recent surgery and wrote just a few weeks after the fall that the implants were "sitting in a good location," and any "irregularities" were from "the previous surgeries and issues[.]" Over a year later, he concluded after diagnostic testing that he could not be "100% sure, or comfortable, with the fact that falling caused all of this to occur." Marriott then asked about causation using language that tracks the statutory definition. Dr. Davis responded that he was unable to give an opinion that her breast condition arose primarily out of her employment. Dr. Davis saw Ms. Lackey three times regarding the alleged work injury and had the benefit of knowing her condition both before and after her fall. His opinion is presumed correct. *See* Tenn. Code Ann. § 50-6-102(14)(E).

The presumption is rebuttable, but Dr. Marks's opinion thus far fails to do so. He saw Ms. Lackey only once and performed no testing. More importantly, he wrote that her breast distortion "may be related" to the fall. This language, and his entire report, fall short of what the statute requires—that an employee show "to a reasonable degree of medical certainty, that the employment contributed more than fifty percent in causing the injury." Moreover, although Ms. Lackey gave him copies of Dr. Davis's records, Dr. Marks's records are silent as to whether he considered them. The statute also requires that a physician consider all potential causes, and it does not appear Dr. Marks did so. Tenn.

Code Ann. § 50-6-102(14)(D). Thus, his opinion does not rebut the presumption of correctness attached to Dr. Davis's opinion, and on this record Ms. Lackey is unlikely to prevail at a hearing on the merits.[3]

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Lackey's request for additional treatment for her breast is denied.

2. This case is set for a status hearing on **October 9 at 9:00 a.m. Central Time.** The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate. Failure to call might result in a determination of issues without your participation.

   **ENTERED August 31, 2020.**

*Kenneth M. Switzer*
_____
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

---

[3] Marriott cross-examined Ms. Lackey about a notation in Dr. Marks's records that she fell "one year ago," which Ms. Lackey characterized as his error. This error is irrelevant and had no impact on the Court's analysis. The Court likewise rejects Marriott's argument that, because the emergency room records do not diagnose a chest injury, Ms. Lackey did not hurt her left breast in the fall. She credibly testified that her chest and left breast suffered from the impact of her fall.

4

**APPENDIX**

Exhibits:
1. Affidavit of Jennifer Lackey
2. Notice of Denial
3. Affidavit of Christina Cannon
4. Dr. Marks's medical records
5. Employer's medical records
6. Photographs of Ms. Lackey's workplace and facial and forearm injuries

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice and Marriott's additional issues
3. Show-Cause Order
4. Request for Expedited Hearing
5. Order on Show Cause Hearing
6. Employer's Expedited Hearing Position Statement, March 12, 2020
7. Order Continuing Expedited Hearing
8. Order Setting Status Conference, April 23, 2020
9. Order Setting Status Conference, April 27, 2020
10. Order Setting Expedited Hearing
11. Employer's Expedited Hearing Position Statement, August 12, 2020

**CERTIFICATE OF SERVICE**

I certify that a copy of the Expedited Hearing Order was sent as indicated on August 31, 2020.

| Name | Certified Mail | Regular Mail | Via Email | Service sent to: |
|------|----------------|--------------|-----------|------------------|
| Jennifer Lackey, self-represented employee | | | X | Jlack.72@comcast.net |
| Travis Ledgerwood, employer's attorney | | | X | tledgerwood@morganakins.com plunny@morganakins.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*